UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| COLLEEN BERRIER, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO. 2:07-CV-317 RM |
| ) | |
| MICHAEL J. ASTRUE, COMMISSIONER ) | |
| OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant ) | |

OPINION AND ORDER

Colleen Berrier seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. §§ 423 and 1381 *et seq.* The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3). For the reasons that follow, the court reverses the Commissioner's decision, and remands for further proceedings.

When Ms. Berrier applied for benefits, she asserted disability as of November 2, 2000 due to asthma, obesity, ear problems, hypertension, and depression. Her applications were denied initially, on reconsideration, and following an administrative hearing at which she was represented by counsel.

In evaluating Ms. Berrier's claim of disability, the ALJ considered the documentary evidence presented at that hearing and the testimony offered by Ms. Berrier, her husband Timothy Berrier, medical expert Dr. Ernest Mond, and vocational expert Edward Pagella, and applied the agency's standard sequential

five-step evaluation, 20 C.F.R. §§ 404.1520 and 416.920. The ALJ found that Ms. Berrier hadn't engaged in substantial gainful activity since the alleged onset of disability, and that her impairments (morbid obesity, chronic ear infections, asthma, chronic obstructive pulmonary disease and carpal tunnel syndrome) were severe, but didn't meet or medically equal any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., Appendix 1 (specifically listings 1.04, 3.02, 4.03, and 11.14). Adopting the opinions offered by medical expert, Dr. Ernest Mond, the ALJ found that Ms. Berrier had the residual functional capacity for sedentary work with limitations, and was capable not only of returning to her past relevant work as a receptionist, cook, cashier, and/or stocker, but of making a successful adjustment to other work that existed in significant numbers in the national economy, *i.e.*, general office clerk, cashier, and order clerk. The ALJ therefore concluded that Ms. Berrier wasn't disabled and wasn't entitled to benefits.

When the Appeals Council denied Ms. Berrier's request for review, the ALJ's decision became the final decision of the Commissioner of Social Security. Getch v. Astrue, 539 F.3d 473, 480 (7th Cir. 2008); Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). This appeal followed.

The issue before the court isn't whether Ms. Berrier is disabled, but whether substantial evidence and the law support the ALJ's determination that she was not. Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009); Cass v. Shalala, 8 F.3d 552, 555 (7th Cir. 1993). "An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge

2

from that evidence to the conclusion." Giles ex rel. Giles v. Astrue, 483 F.3d 483, 486 (7th Cir. 2007). If the ALJ does so, the court must affirm the Commissioner's decision. Skinner v. Astrue, 478 F.3d 836, 841 (7th Cir. 2007); Rice v. Barnhart, 384 F.3d 363, 368-369 (7th Cir. 2004); Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000). The substantial evidence standard prevents the court from "reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility" — in short, substituting its own judgment for that of the Commissioner, Williams v. Apfel, 179 F.3d 1066, 1071-1072 (7th Cir. 1999); *accord* Powers v. Apfel, 207 F.3d 431, 434-435 (7th Cir. 2000) — and requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).

Ms. Berrier contends that a remand is required because the ALJ's findings at steps 4 and 5 of the disability evaluation are contrary to the law and not supported by substantial evidence. More specifically, she contends that the ALJ: didn't adequately explain his rationale for finding her testimony less than totally credible, as SSR 96-7p requires; posed a fundamentally flawed hypothetical to the vocational expert; and failed to resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT) as required by SSR 00-4p. While the Commissioner concedes that the ALJ's decision isn't a "model of clarity," he contends that substantial evidence in the record supports the ultimate determination that Ms. Berrier was not disabled.

3

An ALJ's credibility determination is accorded great deference, and won't be overturned unless it is patently wrong. Sims v. Barnhart, 442 F.3d 536, 537 (7th Cir. 2006); Zurawski v. Halter, 245 881, 887 (7th Cir. 2001); Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000). Social Security Ruling 96-7p outlines how the ALJ should assess a claimant's credibility when allegedly disabling symptoms (such as pain or fatigue) are not objectively verifiable, and directs that the ALJ's evaluation:

> must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight….It is not sufficient for the adjudicator to make a single, conclusory statement that the individual's allegations have been considered…[nor is it] enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.

Zurawski v. Halter, 245 881, 887 (7th Cir. 2001) (internal quotation marks and citations omitted); S.S.R. 96-7p. In addition:

> the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and other relevant evidence in the case record.

S.S.R. 96-7p.

The ALJ acknowledged that Ms. Berrier had medically determinable impairments that could reasonably be expected to produce the alleged symptoms, but found that her testimony about the intensity, persistence, and limiting effects

4

of those impairments was "not entirely credible." In support of his determination, the ALJ noted that: the medical evidence showed Ms. Berrier had normal lung capacity and normal diffusion, despite chronic obstructive pulmonary disease; she continued to smoke, despite repeated recommendations by her doctors that she stop; there was no clinical evidence to support her allegations relating to back pain; her hypertension was controlled by medication; a treating physician, Dr. Keenan, noted no functional limitations or work related physical activity restrictions due to hearing loss; and her testimony was inconsistent with testimony offered by the medical expert, Dr. Ernest Mond.

The ALJ adequately articulated his reasons for discrediting Ms. Berrier's testimony and provided substantial evidence to support his decision. Under these circumstances, the court cannot find that his assessment of Ms. Berrier's credibility was patently wrong.

The ALJ adopted the opinions offered by medical expert, Dr. Ernest Mond, in determining Ms. Berrier's residual functional capacity, and found that she was capable of performing sedentary work subject to the following limitations: she could only stand and walk for one hour in an 8 hour work day; couldn't climb ladders, ropes or scaffolding, or be exposed to any noxious fumes, odors, respiratory irritants, or temperature extremes; should avoid working at unprotected heights, around dangerous moving machinery or open flames and bodies of water; and couldn't do work requiring fine hearing acuity, frequent fine finger manipulation and forceful gripping bilaterally.

5

At the hearing, the ALJ posed the following hypothetical to the vocational expert:

> Q. Suppose we have a hypothetical individual limited to sedentary exertional duties but limited to one hour of standing and walking in an eight-hour day. No climbing of ropes, ladders, or scaffolds. No concentrated exposure to noxious–clean air environment make it and no concentrated exposures to extremes of temperature and humidity. No work . . . requiring fine hearing acuity, no work at unprotected heights or around dangerous moving machinery, open flames, and bodies of water. Would that hypothetical individual be able to return to any of the past relevant work of the claimant.

The vocational expert initially said no, but upon further reflection said the hypothetical individual could perform Ms. Berrier's past relevant work as a receptionist. He also testified that the individual could perform a variety of other unskilled occupations, including general office clerk (5,500 positions), order clerk (3,200 positions), and cashier (6,800 positions).

Noticeably absent from the ALJ's first hypothetical, however, were the limitations on fine finger manipulation and exposure to noxious fumes, odors, and respiratory irritants — limitations the ALJ found to be credible and which were subsequently included in his residual functional capacity determination. When those limitations were added to the hypothetical on direct and cross-examination, the vocational expert testified that there would be no substantial gainful employment available, past or present.

The ALJ nevertheless concluded from that testimony that Ms. Berrier was capable of returning to her past relevant work (although he never specified which work he was referring to — receptionist, cook, cashier, or stocker), and of adjusting successfully to other work that existed in significant numbers in the national economy, *i.e.*, general office clerk, cashier, and order clerk, and therefore wasn't disabled.

Ms. Berrier contends that the ALJ's hypothetical was fundamentally flawed because it didn't include all of her functional limitations, and that the decision isn't supported by reliable and substantial evidence because the ALJ didn't resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles as required by SSR 00-4p.

The Commissioner concedes that the evidence didn't support the ALJ's findings with respect to Ms. Berrier's past relevant work, but contends that his findings at step 5 are. He maintains that the ALJ met his burden under SSR 00-4p when he asked the vocational expert to make him aware of any differences between his testimony and the DOT at the outset of his questioning, and the vocational expert said there were no conflicts between his testimony and the DOT, and that Ms. Berrier forfeited her right to challenge the reliability of the vocational expert's testimony and the ALJ's reliance thereon because she didn't challenge the foundation at the administrative hearing. *Citing* McKinnie v. Barnhart, 368 F.3d 907, 911 (7th Cir. 2004); Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2002). The Commissioner's reliance on McKinnie and Donahue is misplaced.

In Prochaska v. Barnhart, 454 F.3d 731 (7th Cir. 2006), the court of appeals held that because an ALJ has an affirmative duty under SSR 00-4p to inquire into and resolve apparent conflicts between the vocational expert's testimony and the DOT, a claimant's failure to raise a possible conflict at the administrative hearing doesn't forfeit the right to argue a violation of SSR 00-4p later. Prochaska v. Barnhart, 454 F.3d at 735 (calling language to the contrary in Donahue dicta). "[T]he ALJ's affirmative duty extends beyond merely asking the VE whether his testimony is consistent with the DOT; the ALJ also must 'elicit a reasonable explanation for any discrepancy.'" Overman v. Astrue, 546 F.3d 456, 463 (7th Cir. 2008) (quoting Prochaska v. Barnhart, 454 F.3d at 735 and Haddock v. Apfel, 196 F.3d 1084, 1087 (10th Cir. 1999)).

The ALJ might have satisfied the first step when he asked the vocational expert to let him know if there was a difference between his testimony and the Dictionary of Occupational Titles, and the vocational expert testified that his responses were consistent with the DOT, but the inquiry didn't necessarily stop there. If conflicts or inconsistencies between the vocational expert's testimony and the DOT are apparent, the ALJ must resolve those conflicts before he can reasonably relying on that evidence to support a finding of no disability. SSR 00-4p; Overman v. Astrue, 546 F.3d at 463; Prochaska v. Barnhart, 454 F.3d at 735.

The issue before the court therefore is whether the inconsistencies asserted by Ms. Berrier were apparent. If they were, the ALJ didn't meet his duty under

SSR 00-4p to investigate and resolve those conflicts, and a remand would be in order.

The Commissioner doesn't acknowledge or dispute the inconsistencies alleged by Ms. Berrier, but appears to contend that any inconsistencies were harmless error because at least one order clerk job was consistent with Ms. Berrier's residual functional capacity and the DOT — that of an industrial order clerk — and a significant number of those jobs were available in the region. But the vocational expert didn't identify which sections or titles of the DOT he was referring to in his testimony, and didn't offer any opinion as to how many industrial order clerk jobs were available. He simply stated that 3,200 order clerk jobs existed in the regional economy. How many industrial order clerk jobs were actually available and whether the ALJ would have found that number to be "significant" are unknown. Those are determinations that the ALJ must make with the help of the vocational expert, not the Commissioner's lawyers or this court.

The transcript of the hearing discloses that the vocational expert's testimony didn't appear to be inconsistent with the DOT, but was inconsistent with the ALJ's decision. When the ALJ's original hypothetical was expanded to include all of the limitations contained in his residual functional capacity assessment, the vocational expert unequivocally testified that the hypothetical individual would be unable to perform Ms. Berrier's past relevant work or any other substantial gainful activity. The ALJ's findings to the contrary were clearly inconsistent with

and unsupported by the vocational expert's testimony, and the ALJ has provided no explanation for the discrepancy or other evidence supporting his decision.

The ALJ's decision must demonstrate the path of his reasoning, and the evidence must lead logically to his conclusion. Steel v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002); Rohan v. Chater, 98 F.3d 966, 971 (7th Cir. 1996). It doesn't do so in Ms. Berrier's case.

For the foregoing reasons, the final decision of the Commissioner of Health and Human Services is REVERSED and the matter REMANDED for rehearing.

SO ORDERED.

ENTERED:   September 30, 2009

　　　　　　　　　　　　　　　　   /s/ Robert L. Miller, Jr.
　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　　United States District Court